DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUMMA EMERGENCY ASSOCIATES, INC., | ) ) ) | CASE NO. 5:11 CV 269 |
| Plaintiff, | ) ) | JUDGE DAVID D. DOWD JR. |
| v. | ) ) ) | MEMORANDUM OPINION |
| EMERGENCY PHYSICIANS INSURANCE CO., RISK RETENTION GROUP | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the Court on a motion by Defendant Emergency Physicians Insurance Co. ("EPIC") to dismiss the proceedings and to compel arbitration based upon the arbitration clause in EPIC's Governance Rules. Plaintiff responded to the motion and Defendant replied. For the reasons that follow, the Defendant's motion is GRANTED.

**I.  Background**

EPIC is a Nevada based risk retention group that provides medical malpractice insurance to emergency medicine physician practices across the country. As a risk retention group, the company is owned by those it insures. EPIC refers to its owner/insureds as "subscribers." In order to become a subscriber, in addition to paying insurance premiums, the insured must make certain capital contributions to EPIC. In 2004, after solicitation from EPIC, Summa Emergency Associates, Inc. ("Summa") subscribed to EPIC. In doing so Summa executed a Subscription

(5:11 CV 269)

Agreement for Surplus Contribution ("Contribution Agreement"), ECF Doc. 7-3 at 2, and a Subscriber's Agreement and Power of Attorney ("Subscriber Agreement"), ECF Doc. 1-2 at 15. Consistent with these agreements, Summa made two capital contributions of surplus to EPIC totaling $545,064.00.

As part of the Subscriber's Agreement, Summa agreed to be bound by EPIC's Governance Rules, which among other things, governed the operation and powers of the Board of Governors and defined Summa's participation in the governance of EPIC. See ECF Doc. 1-2 at 15, ¶ 4. The Governance Rules included an arbitration clause, which provides as follows:

> **8.3 Dispute Resolution**. Any dispute arising out of or by virtue of these Governance Rules or any other dispute involving a subscriber and EPIC or the Attorney-in-Fact shall first be submitted to the Attorney-in-fact for resolution. If the Attorney-in-Fact and all parties agree that arbitration of the dispute is appropriate, or if the dispute is not otherwise promptly and amicably resolved, it shall be submitted to binding arbitration conduct in accordance with the rules of the American Arbitration Association. Such arbitration shall take place in Reno, Nevada, and Nevada law will govern all issues. The determination of the arbitrator(s) shall be conclusive and binding upon the parties, and any determination by the arbitrator(s) of an award may be filed with the clerk of a court of competent jurisdiction as a final adjudication of the claim involved, or application may be made to such court for judicial acceptance of the award and an order of enforcement, as the case may be. The arbitrator(s) shall designate the party to bear the expenses of the arbitrator(s) or the respective amounts of such expense to be borne by each party.

When Summa subscribed to EPIC, EPIC had a management agreement with EPIC Insurance Managers, Inc.("EIM"), which was owned by Nyhan Consulting Group, Inc. Nyhan Consulting Group, Inc. was in turn owned by Bartholomew Nyhan, an EPIC officer and director of EPIC's Board of Governors. The parties agree that Nyhan was involved in the misappropriation of EPIC funds and other acts that eventually lead EPIC to file a lawsuit against

(5:11 CV 269)

EIM and Nyhan in 2009. After Summa became aware of Nyhan's practices, also sometime in 2009, Summa cancelled its insurance polices with EPIC and requested the return of its surplus contributions. EPIC denied Summa's request to return its surplus contributions.

As a result, Summa filed this action in the Court of Common Pleas in Summit County, Ohio, seeking the full return of it surplus capital contributions of $545,064.00. EPIC subsequently removed the case to this Court. EPIC now seeks dismissal, arguing that the arbitration clause in the Governance Rules requires Summa to submit its claims to binding arbitration. Conversely, Summa argues that the arbitration clause in the Governance Rules is not applicable to it claims.

**II.     Law and Analysis**

**A.** *The Federal Arbitration Act and the McCarran-Ferguson Act*

The parties first dispute whether the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, governs EPIC's motion. The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

As this Court has previously recognized, "[t]he Act clearly applies to any contract which contains a written arbitration provision and which evidences a transaction 'involving' interstate

3

(5:11 CV 269)

commerce." *Dantz v. Apple Ohio LLC*, 277 F.Supp.2d 794, 799 (N.D.Ohio 2003). Summa disputes neither that the agreement contains a written arbitration provision nor that it evidences a transaction involving interstate commerce. Rather, Summa argues that the FAA is not applicable here because its operation is reverse-preempted by the McCarran-Ferguson Act,15 U.S.C. §§ 1011-12.

The McCarran-Ferguson Act declares that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance, * * * unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "[T]his provision provides for 'reverse preemption' when regulation of the business of insurance is involved." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010). The FAA does not specifically relate to the business of insurance.[1] *Am. Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006); *McKnight v. Chicago Title Inc. Co., Inc.*, 358 F.3d 854, 857 (11th Cir. 2004). Therefore, "[i]f the state has an anti-arbitration law enacted for the purposes of regulating the business of insurance, and if enforcing, pursuant to the Federal Arbitration Act, an arbitration clause would invalidate, impair, or supercede that state law, a court should refuse to enforce the arbitration clause." *McKnight*, 358 F. 3d at 857 (citing *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 823 (8th Cir. 2001)).

---

[1] The Sixth Circuit has yet to address the effect of the McCarran-Ferguson Act on the FAA. However, to the limited extent the court addresses the issue here, it finds the law applied by the other circuits sufficiently clear and instructive.

4

(5:11 CV 269)

This was exactly the case in *Blue Ridge Emergency Physicians v. Emergency Physicians Ins. Co.*, a case Summa argues controls the decision here. No. 6:10-CV-00428-JMC, 2011 WL 899639 (D.S.C. March 13, 2011).  In *Blue Ridge*, the court had before it the exact arbitration provision from EPIC's Governance Rules at issue here. See *Id.* at *1.  As here, EPIC moved to dismiss and compel arbitration pursuant to FAA 9 U.S.C. § 4.  The court, however, denied EPIC's motion, holding that FAA's application was reverse-preempted by the McCarran-Ferguson Act.   In doing so, the court relied on a South Carolina law, S.C. CODE ANN. § 15-48-10, that precludes the application of any arbitration provision against any insured under an insurance contract. *Id.* at *2.  Relying on South Carolina state court precedent, the court found that § 15-48-10 was enacted for the purpose of regulating the business of insurance.  *Id.* Accordingly, the court held that the McCarran-Ferguson Act precluded the court's ability to compel arbitration under the FAA, and it denied the EPIC's motion to compel arbitration.  *Id.*

Summa argues that the FAA's application is similarly preempted here, contending that EPIC is collaterally estopped  from compelling arbitration by the decision in *Blue Ridge*.  The court disagrees.  Collateral estoppel does not apply where the legal rules governing an issue are different. 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4425 (2d. ed. 2002); The district court in *Blue Ridge* based it's decision upon the operation of South Carolina Law. From the pleadings, it is clear that South Carolina Law has no application in this case.  EPIC is a Nevada based risk retention corporation, and Summa is Ohio based corporation.  Although the contract does not include a specific choice of law clause, it is apparent from the whole of the contract and the facts currently before the court, that only Nevada or Ohio law can possibly have

5

(5:11 CV 269)

any substantive effect here.[2] Thus, the district court's holding in *Blue Ridge* that the arbitration provision was not enforceable based on South Carolina law, does not collaterally estop EPIC from arguing for the enforcement of the arbitration provision here, where South Carolina law does not apply. See similarly *Quixtar Inc. v. Brady*, Nos. 08-14346, 08-14347, 2008 WL 5386774 (E.D.Mich. Dec. 17, 2008) (holding that a 5th Circuit decision on the enforceability of an arbitration provision pursuant to Texas law did not collaterally estop a party from arguing for the validity of the arbitration provision in a separate case governed by Michigan law).

Although EPIC is not estopped from arguing for the enforcement of the arbitration provision, the McCarran-Ferguson Act could still reverse-preempt the FAA if a governing state law had an anti-arbitration provision enacted for the purposes of regulating the business of insurance. Summa has, however, failed to direct the court to such an enactment. Therefore, the court finds that FAA is not reverse-preempted by the McCarran-Ferguson Act and will continue to analyze EPIC's motion under the substantive provisions of the FAA.

**B.** *The Federal Arbitration Act*

As stated above, the FAA provides that an arbitration clause in a commercial agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

---

[2] Where an agreement entered into between the parties does not contain any clear choice of law provision, it is generally governed by the law of the state that has the most significant relationship to the transaction and the parties. See RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS § 188 (1971). Because the two possible choices here, Nevada and Ohio, do not materially differ in their approaches to any relevant matter, the court does not need to determine the controlling law at this time.

(5:11 CV 269)

for the revocation of any contract." 9 U.S.C. § 2.  "This provision establishes 'a liberal federal policy favoring arbitration agreements.'"  *CompuCredit Corp. v. Greenwood*, --- U.S. ----, 2012 WL 43514, slip. op. (2012) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American Courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  It is with this purpose in mind that the FAA directs that the court, when presented with claims that are covered by an arbitration clause, "***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added).  However, "before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Communication Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

The parties do not dispute that there was a valid agreement to arbitrate between them, but they do disagree whether Summa's claims fall within the scope of that agreement.  Therefore, the court finds that the dispositive issue here is whether this dispute falls within the scope of the arbitration clause contained in the party's agreement.  The Court holds that it does.

7

(5:11 CV 269)

**C.** *Scope of the Arbitration Provision*

In light of the federal policy favoring arbitration agreements, the Sixth Circuit has consistently recognized a "strong presumption" favoring the enforcement of arbitration agreements under the FAA. *See e.g. Glazer v. Lehman Brothers, Inc*. 394 F.3d 444, 450 (6th Cir.2005). Therefore, any doubts regarding the scope of arbitrability should be resolved in favor of arbitration. *Glazer*, 394 F.3d at 451 (citing *Moses H. Cone,* 460 U.S. at 24-25). "Where the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration' will remove the dispute from consideration by the arbitrators.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT&T Techs.*, 475 U.S. at 650).

However, the "the FAA does not require the parties to arbitrate when they have not agreed to do so * * * nor does it prevent parties who do agree to arbitrate from excluding certain claim from the scope of their arbitration agreement." *Volt Info. Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). While the court must resolve any ambiguities in favor of arbitration, it will "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Glazer,* 394 F.3d at 451 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

8

(5:11 CV 269)

Under the arbitration provision above, arbitration is required in three types of disputes: 1) any dispute arising out of or by virtue of the Governance Rules; 2) any dispute involving a subscriber and EPIC, and 3) any dispute involving a subscriber and the Attorney-in-Fact. EPIC argues this dispute falls within the scope of the arbitration agreement under both 1) and 2).

First, EPIC argues that all of Summa's claims clearly involve a dispute between a subscriber (Summa) and EPIC. Summa, however, contends that its status as a subscriber terminated when Summa terminated its insurance policy with EPIC. Section 2.1 of EPIC's Governance Rules seems to support Summa's position:

> **Section 2.1. Eligibility.** A subscriber is an entity that meets the qualifications to become a subscriber to EPIC as adopted from time to time by the Board of Governors, executes the Subscribers's Agreement and Power of Attorney, and is insured by EPIC. Subscribers status shall automatically terminate upon termination of a subscriber's insurance policy for any reason, and shall into continue during any extended discovery or reporting period following termination of such policy.

The parties agree that Summa terminated its insurance policy with EPIC on September 1, 2009. Accordingly, pursuant to Section 2.1, Summa's status as a subscriber automatically terminated on that date. Summa, therefore, contends that this is not dispute between a "subscriber" and EPIC, under which the arbitration provision would apply.

Looking solely to Section 2.1, Summa's position has merit. However, Summa's argument necessitates a very narrow interpretation of the term "subscriber," by which "subscriber" only refers to a "current subscriber." The agreement as a whole does not support this narrow interpretation. In fact, when Section 2.1 is read in context with other contract provisions dealing with the termination of a Subscriber's insurance policy, it becomes apparent

9

(5:11 CV 269)

that the subscriber relationship, and with it the duty to arbitrate, does not simply vanish upon the termination of insurance coverage.

> Paragraph 6 of the Subscriber's Agreement states:
>
> Subscriber agrees that this Subscriber's Agreement and Power of Attorney shall remain a in effect so long as Subscriber's insurance policy with EPIC remains in effect.  Subscriber acknowledges that, on termination of Subscriber's insurance policy, Subscriber's status as a ***current subscriber*** and right to vote as a subscriber shall terminate; provided, however that ***Subscriber shall remain bound by the Governance Rules and the Board of Governor's allocation methodologies then in effect with respect to the return of Subscriber's surplus accounts.***

ECF Doc. 1-2 at 16, ¶ 6 (emphasis added).  This provision is particularly relevant here for two reasons.  First, unlike Section 2.1 of the Governance Rules, the Subscriber's Agreement provision states that the subscriber's status as *current subscriber* shall terminate upon the termination of Subscriber's insurance policy.  This implies that the term subscriber, without a specific modifier, is broad enough to include both *current* subscribers and *past* subscribers.  There is no dispute that Summa is a past subscriber of EPIC, nor that Summa's claims in this action arise directly from that subscription.

Additionally, there is no other indication that the parties intended their duty to arbitrate to terminate automatically with the termination of Summa's insurance policy.  In fact, the Subscriber's Agreement compels the opposite conclusion. Paragraph 6 of the agreement makes perfectly clear that even after the termination of the insurance policy, Summa remains bound by the Governance Rules and the Board of Governor's methodologies regarding the return of its surplus contributions.  This evidences the existence of a ongoing relationship between the parties

10

(5:11 CV 269)

extending past the termination of insurance coverage, and upon which the duty to arbitrate was likely intended to extend.

Of course, interpreting exact meanings of terms within a contract is often an arduous task, full of potential pitfalls and folly. However, in light of strong federal policy, and clear Sixth Circuit precedent, this court must resolve any ambiguities in favor of arbitration. The Court, therefore, finds that the term subscriber, as it is used in the arbitration provision, is broad enough to include Summa's current status. Accordingly, this action does involve a dispute between a subscriber and EPIC so as to fall within the scope of the arbitration provision and compel arbitration of this action.

Similar reasoning also leads the Court to find that this dispute falls within the scope of the arbitration agreement because it "aris[es] out of or by virtue of [the] Governance Rules." The parties dispute over EPIC's assertion that Summa's claims rise directly out of the Governance Rules. However, the parties arguments are misplaced because the arbitration provision does not require that the dispute rise directly out of the Governance Rules, only that it arise out of or by virtue of those rules. See Section 8.3, *supra*.

The Sixth Circuit initially interpreted such "arising out of" language in arbitration provisions very broadly.

> [A]rising out of covers all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se. * * * In fact any dispute between the contracting parties that is in any way connected with their contract could be said to arise out of their agreement and thus be subject to arbitration under a provision employing this language. At the very least, an arising out of arbitration clause would arguable cover such disputes, and, under our cases, this is all that is needed to trigger arbitration.

11

(5:11 CV 269)

*Highlands Wellmont*, 350 F.3d at 577-78 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intl. Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)) (internal marks omitted).  Since *Highlands Wellmont*, the court has, however, settled on a test more definite and limited than *Sweet Dreams*. Such that "if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement."  *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007) (reaffirming the test in *Fazio v. Lehman Bros. Inc.*, 340 F.3d 386, 395 (6th Cir.2003)).  However, the court has maintained that such arbitration provisions are still "extremely broad." *Id.* (quoting *Highlands Wellmont*, 250 F.3d at 578).

Arguably, the arbitration provision here does not require the parties to arbitrate any dispute arising out of the entire agreement, only any dispute arising out of the Governance Rules. While presumably this might limit the scope of the arbitration provision in some situations, it does not do so here.  The broad language, "arising out of or by virtue of the Governance Rules," necessarily imposes arbitration unless this action can be maintained without reference to the Governance Rules.  *See Nestle*, supra.  The Court finds that it cannot.

It is true that Summa makes no reference to the Governance Rules in its complaint. But it is clear that the heart of this dispute, and the focus of Summa's claims, is the return of Summa's surplus capital contributions.  Each of Summa's nine counts merely state a different legal theory upon which Summa seeks the return of its surplus contributions from EPIC.  The fact that

12

(5:11 CV 269)

Summa frames the issue as cause in fraudulent inducement, rescission or declaratory judgment does not change the underlying nature of the dispute.[3]

It is in this respect that Paragraph 6 of Subscriber's Agreement again becomes relevant. Under that provision Summa "remain[s] bound by the Governance Rules and the Board of Governor's allocation methodologies then in effect with respect to the return of Subscriber's surplus accounts." ECF Doc. 1-2 at 16, ¶ 6. Because the Governance Rules control the return of Summa's surplus accounts, Summa's action cannot be maintained without reference to the Governance Rules. Thus, Summa's claims also fall within the scope of the arbitration provision requiring arbitration of "any dispute arising out of or by virtue of the governance rules."

**D.** *Judicial Estoppel*

Summa finally argues that EPIC is estopped from compelling arbitration in this case because EPIC successfully argued against arbitration of its own fraud and breach of contract claims in a previous lawsuit, *Emergency Physicians Insurance Co. v. EPIC Insurance Managers, Inc.*, No. 09-A594689-B (Nev. Dist. Ct. filed July 7 2009.). See ECF Doc. 9-2 - 9-4.

---

[3] Although Summa does not raise the issue, it should be noted that a party may not avoid an otherwise enforceable arbitration provision simply by bringing a fraudulent inducement claim or other claim attacking the validity of the entire contract. The U.S. Supreme Court has held that questions concerning the validity of the entire contract must, in the first instance, be determined by the arbitrator. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). Only when such claims are directed at the creation of the arbitration clause itself does the FAA allow the court to review them. *See Id.* at 353-54; *Morgan v. Svete*, 366 Fed.Appx. 624, 630 (6th Cir.2010).

(5:11 CV 269)

"The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 25 (quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998)); see also *S. Cal. Edison v. First Judicial Dist. Ct. of State of Nevada*, 255 P.3d 231, 237 (Nev. 2011).  "Courts apply judicial estoppel in order to 'preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" *Id.* (quoting *Griffith*, 135 F.3d at 380).

The application of judicial estoppel is not proper here.  First, the two positions taken by EPIC are not inconsistent.  The question of arbitrability in *EPIC v. EIM* concerned a provision in the Management Services Agreement between EPIC and EIM, not EPIC's Governance Rules. This case involves a different contract with a different arbitration provision. See ECF Doc. 9-2 at 29 (MSA arbitration provision).  Thus, any difference in the two positions EPIC has taken is attributable to different facts of those cases and not an intent to abuse the judicial process.

Second, it is not clear if EPIC was in fact successful in its first position. "The word 'successfully' means that 'in order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court.'" *U.S. v. Owens*, 54 F.3d 271, 275 (quoting *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)).  Estoppel is therefore limited to the precise argument made and accepted by the court. *Id.*  In *EPIC v. EIM*, EPIC made several arguments against compelling arbitration, but it is unclear from the court's brief order which, if any, of

14

(5:11 CV 269)

these positions the court adopted.  See ECF Doc. 9-4 at 4.  Therefore, Summa is unable to show that EPIC successfully argued an inconsistent position in a previous case so as to estop it from arguing for enforcement of arbitration here.

### III. Conclusion

Upon review, the Court finds that all of Summa's Claims are governed by the arbitration provision in the parties agreement. Since the parties have agreed to binding arbitration, the Court finds that dismissal, rather than granting a stay, is appropriate.

For the reasons set forth above, the EPIC's motion to compel arbitration and to dismiss is GRANTED.

IT IS SO ORDERED.

| | |
|---|---|
| February 3, 2012 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |